[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-13324
Non-Argument Calendar

_____

D.C. Docket No. 1:14-cv-20593-PCH

EMMANUEL NAVARETTE,

Plaintiff-Appellant,

versus

SILVERSEA CRUISES LTD.,
SILVER SPIRIT SHIPPING CO. LTD.,
V. SHIPS LEISURE INC.,
V. SHIPS LEISURE USA INC.,
V. SHIPS LEISURE SAM, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 5, 2015)

Before ED CARNES, Chief Judge, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Emmanuel Navarette appeals the district court's enforcement of the arbitration agreement in his employment contract with Defendant Silversea Cruises, Ltd. (Silversea).[1]  Navarette filed suit against Silversea seeking damages for injuries he sustained while working on one of Silversea's vessels, the *M/V Silver Spirit*.  After a thorough review of the record, we affirm.

I.

On January 11, 2014, Navarette, a citizen and resident of the Philippines, was injured while working for Silversea as a seaman aboard the *M/V Silver Spirit*. He later underwent surgery, which resulted in the amputation of his left leg above the knee.

At the time of his injury, Navarette's employment with Silversea was governed by the terms of a May 20, 2013 contract (the May 20 Contract), which set forth basic terms and conditions of Navarette's employment, including salary and his work schedule.  The May 20 Contract also specified that "[t]he herein terms and conditions is [sic] in accordance with . . . Memorandum Circular No. 10 . . . [and] shall be strictly and faithfully observed."  Memorandum Circular No. 10

---

[1] In addition to Silversea, Navarette's suit also named the following defendants: Silver Spirit Shipping Co. Ltd., V. Ships Leisure, Inc., V. Ships Leisure USA Inc., V. Ships Leisure SAM, and V. Ships USA LLC (collectively, "the defendants").  Navarette alleged that each named defendant possessed an ownership interest in *M/V Silver Spirit*.

incorporates the Philippine Overseas Employment Administration's (POEA)[2]
Standard Terms and Conditions Governing the Overseas Employment of Filipino
Seafarers On-Board Ocean-Going Vessels (the Standard Terms). Additionally, the
May 20 Contract outlined that "[a]ny alterations or changes" to its terms "shall be
evaluated, verified, processed and approved by the [POEA]."

The same day he signed the May 20 Contract, Navarette also separately
signed the Standard Terms. Among the specific terms set forth in the Standard
Terms are the following two sections relevant to the instant appeal:

Section 29.  Dispute Settlement Procedures

In cases of claims and disputes arising from this employment, the
parties covered by a collective bargaining agreement shall submit the
claim or dispute to the original and exclusive jurisdiction of the
voluntary arbitrator or panel of voluntary arbitrators . . . .  If there is
no provision as to the voluntary arbitrators to be appointed by the
parties, the same shall be appointed from the accredited voluntary
arbitrators of the National Conciliation and Mediation Board of the
Department of Labor and Employment.

The [POEA] shall exercise original and exclusive jurisdiction to hear
and decide disciplinary action on cases, which are administrative in
character, involving or arising out of violations of recruitment laws,
rules and regulations involving employers, principals, contracting
partners and Filipino seafarers.

. . . .

---

[2] The Filipino government regulates the form and content of employment
contracts, as well as other aspects of the seamen hiring process, through a program
administered by the POEA, a division of the Department of Labor and Employment in
the Philippines.

3

Section 31.  Applicable Law

Any unresolved dispute, claim or grievance arising out of or in connection with this contract including the annexes thereof, shall be governed by the laws of the Republic of the Philippines, international conventions, treaties and covenants to which the Philippines is a signatory.

On July 1, 2013, Navarette signed a second contract (the July 1 Contract) with North Sea Marine Service Corporation, the crew agency through which Navarette was hired, setting forth additional details of his employment on the *M/V Silver Spirit*.  On July 11, 2013, the POEA approved Navarette's May 20 contract with Silversea, as well as the Standard Terms.  The POEA never approved the terms of the July 1 Contract.

In March 2014, Navarette filed an amended complaint against the defendants in the Southern District of Florida, seeking damages for Jones Act negligence, 46 U.S.C. § 30104, unseaworthiness, failure to provide maintenance and cure, failure to treat, and general maritime law negligence.  Silversea moved to compel arbitration in the Philippines and dismiss the suit for improper venue.  Following a hearing, the district court granted Silversea's motion to compel arbitration and dismissed Navarette's complaint.  The court later denied Navarette's motion for rehearing and/or reconsideration.  This appeal followed.

II.

This court reviews *de novo* a district court's order to compel arbitration. *Lindo v. NCL (Bahamas) Ltd.*, 652 F.3d 1257, 1275 n.15 (11th Cir. 2011). District courts have a duty to enforce an agreement to arbitrate that falls under the United Nations Convention on the Recognition and Enforcement of Arbitral Awards (the Convention). *Id.* at 1275. The Convention provides that a contracting state "shall recognize an agreement in writing under which the parties undertake to submit to arbitration . . . [their] differences," Convention, Art. II(1), and "shall . . . refer the parties to arbitration" unless the agreement is invalid, *id.*, Art. II(3). After the United States ratified the treaty, Congress enacted legislation, referred to as the Convention Act, that recognizes that a district court exercises "original jurisdiction over . . . an action or proceeding" that "fall[s] under the Convention" because it is "deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203. The Convention Act, like the Convention, encourages district courts to enforce commercial arbitration agreements. *Id.* § 206; *see also Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).

Under the Convention Act, the district court must conduct a "very limited inquiry" in determining whether to enforce an agreement to arbitrate. *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005) (quoting *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002)). When a dispute arises

5

about an agreement to arbitrate, the agreement is governed by the Convention if the following four factors are present:

> (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Id.* at 1294 n.7. If the agreement satisfies those four jurisdictional factors, the district court must order arbitration unless the agreement "is null and void, inoperative or incapable of being performed." Convention, Art. II(3). This Court considers challenges to enforcement "mindful that the Convention Act generally establishes a strong presumption in favor of arbitration of international commercial disputes." *Bautista*, 396 F.3d at 1295 (internal quotation marks and citation omitted).

### III.

#### A. Valid Written Arbitration Clause

In the instant appeal, Navarette contests only the first jurisdictional prerequisite, namely, that the district court erred by compelling the parties to arbitrate because there was no valid enforceable written agreement to arbitrate. We disagree. Under the Convention, parties have an "agreement in writing" if there is "an arbitral clause in a contract or an arbitration agreement, signed by the

6

parties or contained in an exchange of letters or telegrams." Convention, Art. II(2). Here, Silversea supplied the district court with copies of the May 20 Contract and the Standard Terms signed by Navarette.

Navarette does not dispute the veracity of his signatures. Rather, he counters that the Standard Terms document was not incorporated into the employment agreement. Navarette maintains that Article II(2) requires inclusion of an arbitration provision in a signed agreement or an exchange of letters or telegrams. But this argument fails to address the fact that Navarette separately signed the Standard Terms, which contained the arbitration provision. *See Bautista*, 396 F.3d at 1300 (rejecting plaintiffs' contention that there was no agreement in writing to arbitrate based on the court's conclusion that the crewmembers signed both the employment contract and the POEA Standard Terms and Conditions to be incorporated in the contract). Accordingly, we conclude that this documentation fulfills the jurisdictional prerequisite that the court be provided with an agreement to arbitrate signed by the parties.

B. Novation

In the alternative, Navarette asserts that there was no binding written agreement to arbitrate because the July 1 Contract, which did not contain an arbitration clause, constituted a novation of the May 20 Contract and its corresponding agreement between the parties to submit to arbitration.

7

"A novation is a mutual agreement between the parties for the discharge of a valid existing obligation by the substitution of a new valid obligation." *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1237 (11th Cir. 2008) (quoting *Jakobi v. Kings Creek Vill. Townhouse Ass'n*, 665 So. 2d 325, 327 (Fla. Dist. Ct. App. 1995)). A contractual novation has four elements: (1) a previously valid contract; (2) agreement of the parties to cancel that contract; (3) a new valid and binding contract; and (4) agreement of the parties that the new contract will replace and extinguish the old one. *Id.* (applying Florida law); *see also Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 367–68 (4th Cir. 2012) (applying the same four factors under Maryland law to reject a Filipino seaman's contention that a second contract constituted a novation of the initial POEA contract).

As highlighted by the district court, Navarette failed to establish that the July 1 Contract contained any language, express or clearly implied, which demonstrated the parties' intent to extinguish the May 20 Contract. Notably, the parties to the May 20 Contract and July 1 Contract are not identical, which necessarily negates the requirement that the parties intended to extinguish the original document. Moreover, per the terms of the May 20 Contract, any "alterations or changes" to that agreement were conditional on the POEA's approval. There is nothing in the record to establish that such approval was forthcoming with respect to the July 1

8

Contract.  As such, we reject Navarette's contention that the July 1 Contract

constituted a novation of the May 20 Contract.[3]

### C.  Public Policy Considerations

Finally, Navarette argues that, even assuming the existence of a valid

arbitration clause, this Court should not compel the parties to arbitrate because this

would constitute a violation of public policy.  Specifically, he contends that

enforcing the arbitration clause would prevent him from effectively vindicating

rights secured under United States law.

This argument, however, is squarely foreclosed by binding precedent.  In

*Lindo*, we rejected an identical contention, holding that a seafarer's assertion that

the choice-of-law clause contained in his arbitration agreement would foreclose all

meaningful relief under U.S. statutory law was premature and provided no defense

to the enforcement of an arbitration clause.  652 F.3d at 1276–77, 1284–85.  We

are bound by our holding in *Lindo*.  *See United States v. Vega-Castillo*, 540 F.3d

1235, 1236 (11th Cir. 2008) (holding that this Court is bound to follow prior

---

[3] Navarette also argues that under the terms of the governing collective bargaining agreement entered into by a trade union on his behalf with Silversea, and referenced in the July 1 contract, he is entitled to bring both a claim for compensation at law and a claim for disability benefits in the Philippines for injuries arising out of the same incident.  Although Navarette briefly referenced this point in the context of his novation argument before the district court, he did not raise the exact argument he makes on appeal, namely, that even if compelled to arbitrate in the Philippines, he retains the right to pursue damages.  As a result, we will not consider this argument.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (noting that, in general, this Court will not address issues raised for the first time on appeal).

precedent unless and until it is overruled by the Supreme Court or by this Court sitting *en banc*).  Navarette may, if he so chooses, argue Filipino law afforded him no meaningful relief at the award-enforcement stage.   *See Lindo*, 652 F.3d at 1280–82 (noting that the seaman was free to raise his public-policy defense after arbitration had concluded).

**AFFIRMED.**